UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

---

RED CLIFF BAND OF LAKE SUPERIOR
CHIPPEWA INDIANS,

                        Plaintiff,

        v.

BAYFIELD COUNTY, WISCONSIN,

                        Defendant.

Case No. 18-cv-828

---

## COMPLAINT

---

Plaintiff Red Cliff Band of Lake Superior Chippewa Indians ("Plaintiff" or "Tribe"), by and through its attorneys, Godfrey & Kahn, S.C., hereby files its Complaint and demands judgment against Defendant, and as grounds therefor states as follows:

### NATURE OF ACTION

1.  The Tribe brings this action for a declaratory judgment and permanent and preliminary injunctive relief under 28 U.S.C. § 2201 and Rules 15(a) and 65 of the Federal Rules of Civil Procedure against Bayfield County, Wisconsin ("Defendant" or "County"). The County's imposition of its zoning ordinance on the Tribe, and tribal members, within Reservation boundaries, violates the "policy of leaving Indians free from state jurisdiction and control … deeply rooted in the Nation's history," *Rice v. Olson*, 324 U.S. 786, 789 (1945), and infringes "the right of reservation Indians to make their own laws and be ruled by them," *Williams v. Lee*, 358 U.S. 217, 220 (1959), and violates other federal law prohibitions against State regulation of Reservation Indians.

19290826.4

2.      The Tribe, on its own behalf and *parens patriae* on behalf of its members, seeks an order permanently enjoining the County from enforcing its zoning and other regulations on the Tribe or its members within the Tribe's Reservation, whether on fee land or trust land.

### JURISDICTION AND VENUE

3.      The Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1362 (civil actions arising under federal law brought by federally recognized Indian tribes), and 28 U.S.C. §§ 2201-2202 (the Declaratory Judgment Act). The Tribe asserts claims arising under the Constitution, laws and treaties of the United States, including but not limited to Art. I, § 8, cl. 3, Art. II, § 2, cl. 2, and Art. VI of the Constitution of the United States, the Treaty with the Chippewas of September 30, 1854, and the federal common law.

4.      Venue is properly in this Court under 28 U.S.C. § 1391(b) because both parties are located in the Western District of Wisconsin and the events giving rise to the Tribe's claims occurred within the District.

### PARTIES

5.      Plaintiff is a sovereign Indian tribe exercising governmental authority over its citizens and territory pursuant to its aboriginal sovereignty and a Constitution adopted under the Indian Reorganization Act of 1934, 48 Stat. 984, as codified at 25 U.S.C. §§ 5101 et seq. ("IRA").

6.      The Tribe is acknowledged by the United States "to have the immunities and privileges available to federally recognized Indian Tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations, and obligations of such Tribes." 83 Fed. Reg. 34863, 34865, July 23, 2018. The

2

Tribe's government offices are located at 88455 Pike Road, Bayfield, Wisconsin, which lies within Bayfield County.

7.      The Defendant is a county organized under the laws of the State of Wisconsin with its offices at 117 E. 5th St., Washburn, Wisconsin.

## THE TRIBE AND ITS LAND USE REGULATIONS

8.      The Tribe is a successor-in-interest to the La Pointe Band of Lake Superior Chippewa that signed the Treaty of September 30, 1854 with the United States made at LaPointe, Wisconsin ("La Pointe Treaty"), 10 Stat. 1109, United States ("La Pointe Treaty"), in particular the portion of the La Pointe Band led by Chief Ke-Che-Waishke ("Buffalo").

9.      For most of its history, the Tribe was governed by traditional, clan-based structures.  In 1936, the Tribe adopted a Constitution under the IRA.  The Tribe today is governed by an elected nine-member Tribal Council comprised of a Chair, Vice-Chair, Secretary and Treasurer, serving staggered, two-year terms. The Tribal Council exercises executive and legislative powers. The Tribal Court exercises judicial powers.

10.      The Tribe's reservation ("Reservation") on the shores of Lake Superior, located on lands that the Tribe has occupied from time immemorial, was established and guaranteed to the Tribe by the La Pointe Treaty and encompasses approximately 14,540 acres.

11.       During the period 1877 – 1897, the Reservation was allotted to tribal members, who received patents, with the restriction that neither the patentee nor his or her heirs "shall … sell, lease or in any manner alienate said tract without the consent of the President of the United States."

12.      In the decades following, the restrictions on alienation were removed from many of the Red Cliff patents and some of the lands passed out of Indian hands.

3

13.     In 1934, Congress enacted the Indian Reorganization Act, 48 Stat. 984, 25 U.S.C. § 5101 et seq., which repudiated the policy of allotment.

14.     In 1970, Congress enacted Pub. L. 91-424, creating the Apostle Islands National Lakeshore, Pub. L. 91-424, which includes not only the Apostle Islands off the shore of the Reservation but also approximately 1,540 acres of shore mainland within the Reservation. These lands are now under exclusive federal jurisdiction and not subject to regulation by the Tribe or the County.

15.     Notwithstanding alienation of certain lands over time, as described above, the Reservation has maintained its predominantly Indian character. Ownership today falls into the following categories, with the approximate acreages of each:

- Trust lands owned by the Tribe                                      6,331 acres
- Fee Lands owned by the Tribe                                       1,047 acres
- Trust or restricted fee lands owned by tribal members     1,767 acres
- Fee lands owned by tribal members                              511 acres
- United States Apostle Islands Lakeshore (Federal)          1,540 acres
- Forest Fee lands owned by Bayfield County                   1,500 acres
- Fee lands owned by non-Indians other than County          1,845 acres

16.     The Reservation comprises approximately 1% of Bayfield County. The Tribe and its members own 74% of the Reservation, not including the federally-administered Apostle Islands National Lakeshore. The County owns approximately 1,500 acres within the Reservation, all of which is unoccupied forest land. Non-Indians occupy just 12.5% of the Reservation.

17.     Of the 1,353 persons who reside on the Reservation, eighty-seven percent are Indians. Nine-one percent of Reservation households are led by Indians.

4

18.     The Red Cliff Tribal government offices, facilities and enterprises, including administrative buildings, health clinic, housing authority, casino, hotel, marina, etc., are all located on the Reservation. The Tribe provides a wide array of governmental services to both member and nonmember Reservation residents, including police, fire, emergency, social services, judicial services, roads, water, wastewater, etc.

19.     The Tribe's government agencies and enterprises employ approximately 500 persons on the Reservation. The Tribe is the largest employer in Bayfield County. The Tribe is aware of no County employees on the Reservation.

20.      In the exercise of its legislative authority, the Tribal Council has enacted  over fifty ordinances, including many that relate to land use, such as logging and burning (Chapter 11), pollution and environmental protection (Chapter 12), leasing (Chapter 18), historic preservation (Chapter 20), water and sewer (Chapter 34), land use (Chapter 37) and flood damage reduction (Chapter 55).   The Tribe's ordinances are available at http://redcliff-nsn.gov/Government/chapters_table_contents.htm.

21.     Chapter 4 of the Red Cliff Tribal Code establishes the Tribe's court and provides the procedures for enforcement of tribal ordinances in Tribal Court.

22.     The Tribe's Land Use Ordinance, Chapter 37 of the Tribal Code of Law ("Tribal Land Use Ordinance"), was enacted March 11, 1993 and last amended in 2003. Its purpose is described at Section 37.2:

> This Chapter is for the purpose of controlling land use within the Red Cliff Reservation boundaries for the protection of the health, safety and welfare of the people who live within the Reservation. Its aim is to encourage the most appropriate use of the land, the protection of the Reservation's economic and social stability, the

promotion of orderly development on the Reservation, and the preservation of natural areas.

23.     The Tribal Land Use Ordinance provides for a Project Application and Compliance ("PAC") Review Board and a Zoning Administrator. The PAC Board is composed of the Tribe's Historical Preservation Officer, Land Specialist, Public Works Department Administrator, Natural Resources Administrator and Health Specialist. The PAC Board has the authority to review applications, hold hearings, approve or disapprove petitions for special permits and adopt regulations. The Zoning Administrator investigates violations, issues Land Use permits approved by the PAC team and makes recommendations to the PAC Board with respect to general permits and to the Tribal Council with respect to appeals from denials.

24.     The Tribal Land Use Ordinance divides the Reservation into ten zoning districts, including four residential districts and districts designated commercial, agricultural, forestry, preserved, municipal/institutional, and recreational. Section 37.5. The ordinance identifies permissible uses within each district and addresses home business uses, setbacks, signs, etc. A property owner must apply to the PAC for a land use permit "before commencing any construction of a new building or structure, or any alteration of an existing structure which will require more land area than does the existing structure, or any moving or destruction of any structure, or other change in the use of land which may potentially affect traffic patterns, population density, or otherwise impact on the adjoining physical or social environment, within the exterior boundaries of the Reservation." Section 37.8.1. The Ordinance provides a separate process for special permits for otherwise impermissible uses and prescribes the circumstances under which the PAC may grant such permits. Section 37.9.

6

25.     The Tribal Land Use Ordinance, Section 37.12, provides that "[t]he Tribal Prosecutor and the Tribal Attorney shall have the authority to prosecute violations of this Chapter."

26.     Pursuant to its rule-making authority, the Red Cliff PAC Board has adopted Red Cliff Land Use Project Application and Compliance Review (PAC) Policy and Procedures ("Land Use Policies"). The Land Use Policies apply to any "land use project within the exterior boundaries of the reservation" and provide details regarding the land use permit process that are not included in Chapter 37. The extensive list of PAC Reviewable projects, including virtually any construction, is provided at Appendix 1 to the Land Use Policies. Section 20.2.2 of the Tribe's Historic Preservation Ordinance requires an historical or cultural survey for any Appendix 1 Project if recommended by the Tribe's Historic Preservation Office.   The Land Use Policies also include a fee schedule and list of tribal codes and ordinances that the PAC reviews in connection with projects under its jurisdiction.

27.     The Tribe's land use laws and policies, as well as the Court Code providing for their enforcement, were adopted pursuant to the Tribal Council's authority under its Constitution, Article VI, Section 1(p), to "promulgate and enforce ordinances governing the conduct of persons subject to the jurisdiction of the tribe, and providing for the maintenance of law and order and the administration of justice by establishing a reservation court and defining its duties and powers."

28.     Bayfield County's zoning ordinance, comprising approximately 150 pages addresses a wide variety of land uses and imposes heavy and intrusive regulatory burdens. In addition to restricting activities and requiring permits for a wide variety of activities, the ordinance establishes thirteen different zoning districts and dictates the permissibility of more

7

than 150 specific types of businesses in each. Section 13-1-62.  If these regulations were imposed on the Tribe, the County Planning and Zoning Committee, composed of non-Indians, would determine whether the Tribe, or a tribal member residing within the Red Cliff Reservation, could operate an archery range, bicycle shop, bowling alley, florist shop, hardware store microbrewery, printing shop, riding stable, shopping center, water reservoir, etc., on tribally owned land.

### COUNTY ENFORCEMENT THREATS AND ACTIONS

29.     In a letter to Assistant Tribal Attorney Wade Williams dated May 3, 2016, Bayfield County Attorney Linda Coleman, responding to a proposal from the Tribe that the parties enter into a jurisdictional agreement, made the following statement:  "Bayfield County will continue to implement and enforce County zoning ordinances on fee simple parcels located within the reservation boundary. We will do so regardless of the tribal membership of the owners of such parcels."

30.     In 2016, Red Cliff tribal members Curtis and Linda Basina satisfied all requirements under tribal law under the PAC process and received authorization from the Tribe to develop, build and operate a micro-distillery, known as Copper Crow Distillery, on fee land that they owned within the Reservation. After the County threatened them with enforcement, they were forced to comply with Bayfield County's zoning regulations, as well, rendering the Tribe's regulations meaningless.

31.     Red Cliff tribal member Linda Bristol received a permit from the Tribe to construct improvements on her property, located on Reservation fee land. In 2017, the County nevertheless sued her in the Circuit Court for Bayfield County. *Bayfield County v. Bristol*, Case

8

No. 17 CX 30 (Bayfield Cty., Wis., filed Dec. 1, 2017). In its Brief in Opposition to Defendant's Motion to Dismiss, the County argued incorrectly that "the Supreme Court has already ruled that fee simple properties, within reservation boundaries, even if owned by a Tribe, are subject to state jurisdiction."

32.     In a letter dated July 30, 2018 to the Bureau of Indian Affairs, Bayfield County Attorney Linda Coleman objected to an application by a Red Cliff tribal member to have the federal government take her property, located adjacent to the Reservation, into trust, contending that "even fee- simple parcels within reservation boundaries are subject to Bayfield County zoning."

## FIRST CLAIM (INJUNCTIVE RELIEF)

33.     The Tribe incorporates paragraphs 1 through 32 herein.

34.     The County's enforcement of its zoning regulations against the Tribe infringes the Tribe's right of self-government and violates well-established principles of federal law, as stated in *Rice v. Olson*, 324 U.S. 786, 789 (1945), *Williams v. Lee,* 358 U.S. 217, 220 (1959); *Moe v. Salish & Kootenai Tribes*, 425 U.S. 463 (1976), *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980) and other decisions of the United States Supreme Court.

35.     Hence, the Court should enjoin the County from enforcing its zoning ordinances against the Tribe and its members.

## SECOND CLAIM (DECLARATORY JUDGMENT)

36.     Plaintiff incorporates the allegations in paragraphs 1 through 34 above.

37.     The Tribe seeks a declaration pursuant to Rule 57, Fed. R. Civ. Proc., that the County's enforcement of its zoning and other land use ordinances against the Tribe and its members within the Reservation is prohibited under federal law.

9

19290826.4

38.     The County has summarily rejected efforts by the Tribe to open a dialogue regarding land use issues, explicitly asserted the authority to impose its zoning laws against the Tribe and its members on their own lands within the Reservation, threatened enforcement actions against the Tribe itself and affirmatively enforced County zoning laws against tribal members with respect to their activities within the Reservation on their own lands.

39.     There exists an actual controversy within the Court's jurisdiction.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request the following relief:

    a.     A declaration that the County is without authority to enforce its land use regulations against the Tribe or its members within the Reservation, whether on fee or trust land;

    b.     A preliminary and permanent injunction prohibiting the County from enforcing its zoning ordinances against the Tribe or its members within the Reservation, whether on fee or trust land;

    c.     An award to Plaintiff of its costs and attorneys' fees incurred in this matter; and

    d.     Such other relief as the Court deems just and proper.

## WAIVER OF JURY

Plaintiff hereby waives its right to demand a jury to hear this case.

Dated this 5th day of October, 2018.

GODFREY & KAHN, S.C.

By: *s/ Jonathan T. Smies*
    Brian L. Pierson, State Bar No. 1015527
    Godfrey & Kahn, S.C.
    833 East Michigan Street, Suite 1800
    Milwaukee, WI 53202-5615
    Phone: 414-273-3500

    James A. Friedman, State Bar No. 1020756
    One East Main Street, Suite 500
    P.O. Box 2719
    Madison, WI  53701-2719
    jfriedman@gklaw.com
    Phone: (608) 257-3911

    Jonathan T. Smies, State Bar No. 1045422
    200 South Washington Street, Suite 100
    Green Bay, WI 54301-4298
    Phone:  920-432-9300
    Fax:  920-436-7988
    jsmies@gklaw.com

    Mr. David Ujke, Tribal Attorney
    Red Cliff Band of Lake Superior Chippewa
    88385 Pike Road, Hwy 13
    Bayfield, WI 54814
    Phone:  715-779-3725
    kujke@redliff-nsn.gov

    *Attorneys for Red Cliff Band of Lake Superior*
    *Chippewa Indians*